UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Case No. 25-MJ-217 (ZMF) |
| | : | |
| **CORDELL SIMMS** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia and undersigned counsel, respectfully submits this memorandum in support of its oral motion that Defendant Cordell SIMMS ("SIMMS") be detained pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(E) and 3142(f)(2)(A). The United States requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

**PROCEDURAL HISTORY AND RELEVANT FACTS**

As reported in Metropolitan Police Department ("MPD") Criminal Case Number ("CCN") 25-138-580, on September 10, 2025, Officer Ishakwue was working the evening tour of duty. Officer Ishakwue was utilizing call sign 4071E, operating a marked scout cruiser in full uniform. At approximately 4:45pm, Officer Ishakwue and other MPD officers responded to a call for service regarding a person with a gun. The caller described the individual as a Black male, medium complexion, approximately 6 feet tall, with a slim build, wearing a grey sweater and blue jeans. The caller further stated that the subject had a firearm in his waistband and was sitting on the porch steps near 2nd and Farragut Streets, Northwest.

Officers responded to that location and canvassed the area but did not observe anyone matching the given description. Officers continued canvassing nearby streets. At approximately 4:53pm, while driving westbound on Farragut Street, Northwest, Officer Ishakwue, observed a group of individuals, including children and adults, gathered near the entrance steps of 5001 First Street, Northwest. One of those individuals was a man, later identified as SIMMS, who was wearing a grey hooded sweatshirt under a grey and blue jacket and carrying a backpack.

While observing the individuals, Officer Ishakwue noticed that SIMMS was also watching Officer Ishakwue. Officer Ishakwue then observed SIMMS remove the backpack and hand it to a juvenile female that was standing nearby. Based on the backpack's appearance as it was passed from SIMMS to the juvenile female, Officer Ishakwue believed that the backpack contained a weighted object. Upon receiving the backpack, the juvenile female immediately began walking toward the front door of 5001 First Street, Northwest. Based on the backpack's appearance, the way SIMMS was watching Officer Ishakwue, and the suspicious nature of SIMMS' handoff of the backpack, Officer Ishakwue suspected that SIMMS was attempting to remove a firearm from the scene to conceal it inside a private residence.

At that point, Officer Ishakwue exited his vehicle, which was parked at an angle in front of the location, providing a clear view of the individuals present. Officer Ishakwue approached the residence and instructed the juvenile female to drop the backpack, which she did. As captured in Officer Ishakwue's Body Worn Camera ("BWC") footage, the backpack was grey with a black handle at the top and white lettering.



Officer Ishakwue then seized the backpack. At that point, SIMMS immediately began walking away from the area. Officer Ishakwue gave SIMMS a lawful order to stop, which SIMMS ignored, and began running away. Officer Ishakwue pursued SIMMS on foot while maintaining possession of the backpack. Additional MPD Officers also gave chase.

SIMMS ran westbound along the sidewalk of 5013 First Street, Northwest, then through the rear of the property and back to 5001 First Street, Northwest, eventually making his way to the parking lot of a shopping complex located at 5000 New Hampshire Avenue, Northwest. There, SIMMS entered a black Nissan Sentra but soon exited the vehicle and continued fleeing on foot. Officers continued pursuing SIMMS, who was ultimately apprehended at 5040 First Street, Northwest, at approximately 4:56pm.

After SIMMS was detained, Officer Ishakwue searched the backpack and found a Ruger, Model SR40, .40 caliber semi-automatic handgun with an obliterated serial number that was fitted with a laser sight. The Ruger SR40 was loaded with one round in the chamber and 11 rounds in the magazine.

 

A WALES/NCIC check confirmed that SIMMS does not have a permit to carry a firearm in the District of Columbia.  A criminal history check revealed that SIMMS was convicted of Attempted Assault with a Dangerous Weapon in D.C. Superior Court Case Number 2020 FD3 004091, for which he was sentenced to serve 18 months' imprisonment.  There are no firearms or ammunition manufacturers in the District of Columbia.  Defendant was also serving active terms of supervised release in D.C. Superior Court Case Numbers 2022 DVM 368 and 369, where he was convicted of Simple Assault (domestic), Second Degree Theft, and two counts of Contempt (conditions of release).

After SIMMS was apprehended, MPD Officers contacted the shopping center located at 5000 New Hampshire Avenue, Northwest, and obtained surveillance video from that location.  That surveillance video showed SIMMS parking a black Nissan Sentra at that location at approximately 4:46pm. SIMMS exited the vehicle and was seen walking away from the vehicle and holding a grey backpack with a black handle at the top and white lettering which is visually identical to the backpack seized by Officer Ishakwue.





Following his arrest, SIMMS was transported to an interview room where ATF Special Agent Ann Lohman read him his <u>Miranda</u> rights. After agreeing to answer questions without a lawyer present, SIMMS admitted that he had previously been convicted of a felony crime for which he had served more than a year in jail. During the interview, SIMMS also consented to the collection of his DNA by way of buccal swab, and a buccal swab was collected from SIMMS during the interview.

## ARGUMENT

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). The parties may proceed by way of proffer and hearsay is permitted. <u>Id</u>.; <u>United States v. Smith</u>, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the United States is not required to

5

"spell out in precise detail how the United States will prove its case at trial, nor specify exactly what sources it will use." United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986); United States v. Williams, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should neither be a mini trial, nor used as a subterfuge to obtain discovery. Smith, 79 F.3d at 1210; Williams, 798 F. Supp. at 36.

1. **The United States' Bases for Detention**

The United States also seeks pretrial detention pursuant to 18 U.S.C. 3142(f)(1)(E), because SIMMS is charged with a felony firearms offense. The United States also seeks pretrial detention pursuant to 18 U.S.C. § 3142(f)(2)(A), because SIMMS presents a serious risk that he will flee or fail to appear as directed.

2. **The Bail Reform Act Factors All Favor Detention Given SIMMS's Risk of Dangerousness to the Community**

As the Court is aware, 18 U.S.C. § 3142(g) enumerates four factors that the Court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. Each of these factors weighs in favor of pretrial detention in this case.

    A. **The Nature and Circumstances of the Offenses Weigh in Favor of Detention**

The Nature and Circumstances of the charged offense weighs heavily in favor of pretrial detention in this case. SIMMS, a convicted felon who was actively serving a period of supervised release, was carrying a loaded handgun in a backpack in the community. SIMMS' handgun had an obliterated serial number and was fitted with a laser sight – thus transforming it from a "self-defense" weapon into an untraceable killing machine. Upon seeing a police officer, SIMMS abandoned the

backpack to the custody of a juvenile female – foisting the untraceable killing machine into the hands of a child who lacked the capacity to safely handle a firearm.

**B.     The Weight of the Evidence Against the SIMMS Favors Pretrial Detention**

The evidence of both SIMMS's guilt and his dangerousness to the community are incredibly strong and weigh heavily in favor of pretrial detention. The circumstances of SIMMS' offense and arrest are captured on Officer Ishakwue's BWC, and surveillance video shows that SIMMS was in possession of the backpack moments a short time prior to the encounter.

**C.     SIMMS's History and Characteristics Weigh in Favor of Detention**

SIMMS's history and characteristics weigh heavily in favor of pretrial detetion. SIMMS' criminal history shows a lengthy, and troubling pattern of violence –including both family violence and the use of a firearm. As shown below, SIMMS has also amassed numerous convictions for Contempt based on his failure to abide by the terms of pretrial release. Finally, SIMMS criminal history shows that he has repeatedly failed to comply with the terms of supervised release – for the past 10 years, all of his supervised release terms were revoked to incarceration.

| Case Number | Offense | Sentence | Post-Conviction |
|---|---|---|---|
| 2022-DVM-369 D.C. Superior Ct. | Simple Assault Contempt / Violation Theft Second | 540 days with 270 suspended. 48 months' supervision | On Supervision. Show Cause on 10/23/25 |
| 2022-DVM-368 D.C. Superior Ct. | Contempt | 180 Days, Suspended 24 months' supervision | On Supervision. Show Cause on 10/23/25 |
| 2022-DVM-123 D.C. Superior Ct. | Dest. Property Unlawful Entry | 120 days, Suspended 120 days, Suspended 24 months' supervision | On Supervision. Show Cause on 10/23/25 |
| 2020-FD3-4091 D.C. Superior Ct. | Att. ADW/Gun | 18 months' incarceration 3 years supervised release | Supervised release revoked to incarceration |
| 2018-CF3-17738 D.C. Superior Ct. | Simple Assault Dest. Property | 30 days per count, followed by 1 year supervision | Supervised release revoked to incarceration |

7

| | | | |
|---|---|---|---|
| 2016-DVM-301 D.C. Superior Ct. | Simple Assault Contempt – Condition of Release | 180 days per count, followed by 1 year supervision | Supervised release revoked to incarceration |
| 2015-DVM-2221 D.C. Superior Ct. | Simple Assault Obstructing Law Enforcement/Child Welfare Agency Dest. Property | 180 Days per count, followed by 1 year supervised release | Supervised release revoked to incarceration |
| 2015-CF1-847 D.C. Superior Ct. | Misd. Sexual Abuse of a Child/Minor | 180 days, followed by 1 year supervised release | Supervised release revoked to incarceration |
| 2014-CMD-22190 D.C. Superior Ct. | Dest. Property | 15 days, followed by supervised probation | Supervised probation revoked to incarceration |
| 2013-CMD-10331 D.C. Superior Ct. | Assault on Police Officer x 2 | 30 days, suspended. 6 mos. Unsupervised probation | Probation terminated successfully. |
| 5D00305597 Montgomery County, Maryland | Disorderly Conduct | 60 days | No information |
| 12CR387913 Fulton County, Georgia | Cruelty to Children Battery – Family Violence | Pending – non-extraditable warrant | |

The most troubling of these offenses is SIMMS' 2020 conviction for Attempted Assault with a Deadly Weapon/Gun. According to the police report, that case began when S.L. confronted SIMMS about text messages in his phone with other women. In response, SIMMS drove S.L. home and left her there. He later returned to the location and, when S.L. informed SIMMS that their relationship was over, he produced a handgun, pointed it at S.L.'s face, and said "stop fucking playing with me." S.L. then went inside her apartment, at which time SIMMS began kicking her front door for her to open it. A third-party witness opened the door and asked if SIMMS had a problem, to which SIMMS responded "Yeah" and "I am going to shoot her in the face."

In addition to these convictions, the Pretrial Services Report shows that, between 2013 and 2022, 18 bench warrants have been issued for SIMMS' arrest based on his failure to appear in Court. PSA Report, at 3.

8

### D. The Danger to the Community Created by SIMMS's Release Weighs in Favor of Detention

The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'" United States v. Munchel, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting United States v. Salerno, 481 U.S. 739, 755 (1987)). This requires the Court to make a "forward looking determination" about the Defendant's risk of danger to the community, keeping in mind that detention may be justified even if the Court does not explicitly find that Defendant is a risk of committing acts of violence. United States v. Hale-Cusanelli, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing Munchel, 991 F.3d at 1283). The Court may consider whether or not it believes the Defendant will comply with terms of pretrial release in making this determination, but the detention decision cannot be based exclusively on that consideration. Munchel, 991 F.3d at 1281, 1283.

SIMMS poses an obvious and articulable threat to the community. Specifically, the threats posed by SIMMS are that he will continue to arm himself illegally and that he will continue to engage in acts of violence. Even if this Court were to find that SIMMS is not a risk of committing additional acts of violence, the risk of dangerousness that he poses to the community justifies pretrial detention. SIMMS also poses an obvious risk that that he will fail to appear as ordered. Though the United States does not believe that SIMMS will flee the jurisdiction, his record of both violating court-ordered release conditions and failing to appear as ordered demonstrate that there are no conditions or combination of conditions that will ensure that SIMMS' presence for trial.

## CONCLUSION

SIMMS is eligible for pretrial detention pursuant to 18 U.S.C. §§ 3142(f)(1)(E) and 3142(f)(2)(A). All four of the Bail Reform Act factors weigh heavily in favor of pretrial detention, and there are no conditions which could reasonably ensure either the Defendant's presence at trial or the safety to the community if SIMMS is released pending trial in this case.

WHEREFORE, the United States respectfully requests that the Court issue an Order granting the United States' motion that the defendant be held without bond pending trial.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:   */s/ James B. Nelson*
JAMES B. NELSON
D.C. Bar No. 1613700
Assistant United States Attorney
Violent Crime and Narcotics Trafficking Section
601 D. Street, N.W.
Washington, D.C. 20530
(202) 252-6986
james.nelson@usdoj.gov