**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **Case No. 25-CR-321 (EGS)** |
| **CORDELL SIMMS.** | : | |
| **Defendant.** | : | |

**UNITED STATES' SENTENCING MEMORANDUM**

The United States of America, by and through its attorneys, the United States Attorney for the District of Columbia and undersigned counsel, hereby files its sentencing memorandum to assist the Court's consideration of the relevant issues. For the reasons articulated below, the United States respectfully recommends that the Court sentence Defendant Cordell SIMMS to **46** months' imprisonment to be followed by 36 months' supervised release.

**PROCEDURAL HISTORY AND RELEVANT FACTS**

As reported in Metropolitan Police Department ("MPD") Criminal Case Number ("CCN") 25-138-580, on September 10, 2025, Officer Ishakwue was working the evening tour of duty and operating a marked scout cruiser in full uniform. At approximately 4:45pm, Officer Ishakwue and other MPD officers responded to a call for service regarding a person with a gun. The caller described the individual as a black male, medium complexion, approximately 6 feet tall, with a slim build, wearing a grey sweater and blue jeans. The caller further stated that the subject had a firearm in his waistband and was sitting on the porch steps near 2nd and Farragut Streets, Northwest.

Officers responded to that location and canvassed the area but did not observe anyone matching the given description. Officers continued canvassing nearby streets. At approximately 4:53pm, while driving westbound on Farragut Street, Northwest, Officer Ishakwue observed a group of individuals, including children and adults, gathered near the entrance steps of 5001 First Street, Northwest. One of those individuals was a man, later identified as SIMMS, who was wearing a grey hooded sweatshirt under a grey and blue jacket and carrying a backpack.

While observing the individuals, Officer Ishakwue noticed that SIMMS was also watching Officer Ishakwue. Officer Ishakwue then observed SIMMS remove the backpack and hand it to a juvenile female that was standing nearby. Based on the backpack's appearance as it was passed from SIMMS to the juvenile female, Officer Ishakwue believed that the backpack contained a weighted object. Upon receiving the backpack, the juvenile female immediately began walking toward the front door of 5001 First Street, Northwest.

Based on the backpack's appearance, the way SIMMS was watching Officer Ishakwue, and the suspicious nature of SIMMS' handoff of the backpack, Officer Ishakwue suspected that SIMMS was attempting to remove a firearm from the scene to conceal it inside a private residence. At that point, Officer Ishakwue exited his vehicle, approached the residence, and instructed the juvenile female to drop the backpack, which she did. As captured in Officer Ishakwue's Body Worn Camera ("BWC") footage, the backpack was grey with a black handle at the top and white lettering.



Officer Ishakwue then seized the backpack. At that point, SIMMS immediately began walking away from the area. Officer Ishakwue gave SIMMS a lawful order to stop, which SIMMS ignored, and began running away. Officer Ishakwue pursued SIMMS on foot while maintaining possession of the backpack. Additional MPD Officers also gave chase.

SIMMS ran westbound along the sidewalk of 5013 First Street, Northwest, then through the rear of the property and back to 5001 First Street, Northwest, eventually making his way to the parking lot of a shopping complex located at 5000 New Hampshire Avenue, Northwest. There, SIMMS entered a black Nissan Sentra but soon exited the vehicle and continued fleeing on foot. Officers continued pursuing SIMMS, who was ultimately apprehended at 5040 First Street, Northwest, at approximately 4:56pm.

After SIMMS was detained, Officer Ishakwue searched the backpack and found a Ruger, Model SR40, .40 caliber semi-automatic handgun with an obliterated serial number that was fitted with a laser sight. The Ruger SR40 was loaded with one round in the chamber and 11 rounds in the magazine.





A WALES/NCIC check confirmed that SIMMS does not have a license to carry a firearm in the District of Columbia. A criminal history check revealed that SIMMS was convicted of Attempted Assault with a Dangerous Weapon in D.C. Superior Court Case Number 2020 FD3 004091, for which he was sentenced to serve 18 months' imprisonment. There are no firearms or ammunition manufacturers in the District of Columbia. SIMMS was also serving active terms of supervised release in D.C. Superior Court Case Numbers 2022 DVM 368 and 369, where he was convicted of Simple Assault (domestic), Second Degree Theft, and two counts of Contempt (conditions of release).

After SIMMS was apprehended, MPD Officers contacted the shopping center located at 5000 New Hampshire Avenue, Northwest, and obtained surveillance video from that location. That surveillance video showed SIMMS parking a black Nissan Sentra at that location at approximately 4:46pm. SIMMS exited the vehicle and was seen walking away from the vehicle and holding a grey backpack with a black handle at the top and white lettering which is visually identical to the backpack seized by Officer Ishakwue.








Following his arrest, SIMMS was transported to an interview room where ATF Special Agent Ann Lohman read him his <u>Miranda</u> rights. After agreeing to answer questions without a lawyer present, SIMMS admitted that he had previously been convicted of a felony crime for which he had served more than a year in jail. During the interview, SIMMS also consented to the collection of his DNA by way of buccal swab, and a buccal swab was collected from SIMMS during the interview.

On September 11, 2025, SIMMS was charged by Criminal Complaint with one count of Unlawful Possession of a Firearm by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year. (Docket Entry 1). On October 10, 2025, SIMMS was charged with the same offense by Information. (Docket Entry 8). On October 23, 2025, SIMMS pled guilty

to the sole count of the Information pursuant to a written plea agreement. (Docket Entries 11, 12).

## ANALYSIS

## I. UNITED STATES' ANALYSIS OF THE SENTENCING GUIDELINES

Even though the Sentencing Guidelines are advisory, United States v. Booker provides that sentencing courts "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005) (cited in United States v. Brown, 892 F.3d 385, 399 (D.C. Cir. 2018)). The Supreme Court has noted that the Guidelines provide "the starting point and the initial benchmark" for sentencing. Gall v. United States, 590 U.S. 38, 49 (2007); see also United States v. Dorcely, 454 F.3d 366, 375 (D.C. Cir. 2006) ("Booker has not changed how the Guidelines range is to be calculated."). Moreover, the Guidelines' recommended sentencing range will ordinarily "'reflect a rough approximation of sentences that might achieve [18 U.S.C.] § 3553(a)'s objectives.'" Kimbrough v. United States, 552 U.S. 85, 108-09 (2007) (quoting Rita v. United States, 551 U.S. 338, 347-50 (2007)); see also Dorcely, 454 F.3d at 376 (noting that "a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness").

To calculate a Guidelines sentence, the Court must first select the applicable offense guideline and then select the base offense level within that applicable offense guideline. United States v. Flores, 912 F.3d 613, 616 (D.C. Cir. 2019). As the D.C. Circuit has long held, this inquiry must include an evaluation of all relevant conduct that could affect the Guidelines calculation.

> In the post-Booker world, the court must calculate and consider the applicable Guidelines range but is not bound by it. Under the Guidelines, "the sentencing range for a particular offense is determined on the basis of all 'relevant conduct' in which the defendant was engaged and not just with regard to the conduct underlying the offense of conviction." Witte v. United States, 515 U.S. 389, 393 (1995) (citing U.S.S.G. § 1B1.3). Section 1B1.3 details the conduct the sentencing court may consider in determining the applicable Guidelines range and the commentary to that section states, "Conduct that is not formally charged

> or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range." U.S.S.G. § 1B1.3, comment., backg'd.

Dorcely, 454 F.3d at 375.

**A. Calculation of SIMMS' Criminal History Category**

As reflected in the Plea Agreement (Docket Entry 11), the parties calculated that SIMMS' prior convictions warranted 18 criminal history points placing him in Criminal History Category VI. The Pre-Sentencing Investigation Report disagrees. According to the PSR, SIMMS has 12 criminal history points, placing him in Criminal History Category V. For the reasons articulated in the PSR, the United States concedes that the PSR is correct, and that SIMMS should be placed in Criminal History Category V.

**B. Calculation of SIMMS's Advisory Guidelines Range**

The Plea Agreement provided for the following Guidelines calculation:

| | | |
|---|---|---|
| U.S.S.G. § 2K2.1(a)(6) | Base Offense Level | 14 |
| U.S.S.G. § 2K2.1(b)(4)(B) | Obliterated Serial Number | +4 |
| U.S.S.G. § 3C1.2 | Reckless Endangerment During Flight | +2 |
| U.S.S.G. § 3E1.1 | Acceptance of Responsibility | - 3 |
| | Total | **17** |

Offense Level 17 in Criminal History Category V calls for an advisory Guidelines range of 46 to 57 months' imprisonment.

Pursuant to the terms of the Plea Agreement, SIMMS reserved the right to argue that the enhancement under U.S.S.G. § 3C1.2 did not apply. The PSR does not apply the enhancement for U.S.S.G. § 3C1.2. Absent that enhancement, SIMMS' adjusted Offense Level is 15. Offense Level 15 in Criminal History Category V calls for an advisory Guidelines range of 37 to 46 months' imprisonment.

## II. UNITED STATES' ANALYSIS OF THE STATUTORY SENTENCING FACTORS

### A. The Nature and Circumstances of the Offense and SIMMS's History and Characteristics

While serving a period of supervised release, SIMMS – a convicted felon – chose to carry a loaded firearm in a backpack in the District of Columbia. When he noticed law enforcement in the area, SIMMS attempted to avoid being caught with the firearm by abandoning the backpack to the custody of a minor child. The office who observed this interaction promptly intervened and took control of the abandoned backpack, at which time SIMMS elected to flee – leading police on a lengthy foot chase before he was ultimately apprehended. After SIMMS was detained, MPD officers were able to open the backpack and recover the loaded firearm that SIMMS had previously handed to the minor child. These factors support a sentence at the high end of the applicable Guidelines range.

### B. The Need to Reflect the Seriousness of the Offense; Promote Respect for the Law; Provide Just Punishment; Deter Criminal Conduct, and to Protect the Public from Further Crimes of Defendant

It would be difficult to overstate the seriousness of the offense of illegally carrying a firearm, or the degree to which that offense has plagued the District of Columbia. The seriousness of that offense is compounded where, as here, SIMMS was unlawfully in possession of a firearm while on supervised release. The seriousness of SIMMS' offense was further aggravated by his decision to abandon a loaded firearm to the custody of a minor child and then flee on foot in an attempt to avoid law enforcement in this case. The defendant's blatant disrespect for both the law and public safety could not be any more apparent by his conduct in this case; conduct which demands a substantial punishment to ensure both general and specific deterrence. These factors also support a sentence at the high end of the applicable Guidelines range.

## III. UNITED STATES' SENTENCING RECOMMENDATION

For all of the reasons outlined above, the United States respectfully submits that Defendant should be sentenced to a term of **46** months' imprisonment to be followed by a 36-month term of supervised release.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: */s/ James B. Nelson*

JAMES B. NELSON
D.C. Bar No. 1613700
Assistant United States Attorney
Federal Major Crimes Section
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-6986
james.nelson@usdoj.gov